UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

NICK PULLEN AND ELIZABETH WENDT,

        Plaintiffs,

        v.

VICTORY WOODWORK, INC., a Nevada corporation, and DOES 1-20, inclusive,

        Defendants.

NO.  2:07-CV-00417-WBS-GGH

MEMORANDUM AND ORDER RE: MOTION TO STAY

----oo0oo----

Plaintiffs brought this action against defendant Victory Woodwork, Inc. ("Victory") to recover damages for negligence, breach of implied warranty, and breach of a third party beneficiary contract stemming from construction work on their house.  Jurisdiction is based on the diversity of citizenship.  28 U.S.C. § 1332.  Defendant now moves to stay these proceedings pending arbitration.

I. Factual and Procedural Background

        On June 28, 2002, plaintiffs Nick Pullen and Elizabeth

1

Wendt entered into a contract with Geney/Gassiot, Inc. ("Geney") for construction of their home located at 12693 Parsenn Road in Truckee, California. (Mot. to Stay Ex. A ("Prime Contract")). The Prime Contract contains an arbitration provision which provides that:

> Any Claim arising out of or related to the Contract . . . shall, after a decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation . . .

(Prime Contract § 4.6.1.)

The Prime Contract also contains various provisions by which Geney may enter into subcontracts with other individuals and entities, intended to benefit plaintiffs, for the purpose of completing the contracted construction work. (Compl. ¶ 10; Prime Contract Article 5.) The Prime Contract makes clear in this context that "[t]he Contract Documents shall not be construed to create a contractual relationship of any kind . . . between the Owner and a Subcontractor or Sub-subcontractor . . . ." (Prime Contract § 1.1.2.) The Prime Contract thus provides that:

> [T]he Contract shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities . . . which the Contractor, by these Documents, assumes towards the Owner . . . . Each subcontract agreement shall . . . allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner.

(Prime Contract § 5.3.1.)

On July 9, 2002, Geney entered into one such subcontract with defendant Victory to perform woodwork and finishing work on plaintiffs' house. (Mot. to Stay Ex. B

("Subcontract")). The Subcontract incorporates the Prime Contract by reference, and notes that the "[s]ubcontractor agrees: to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract documents . . ." (Id. § 1.)

When plaintiffs first moved into the house built by Geney, they noticed problems with the work performed by Victory. (Compl. ¶ 13.) Plaintiffs (through Geney) notified Victory, who inspected the work and promised to correct the defects. (Id. ¶ 14.) Although defendants undertook to correct the supposedly faulty work, they failed to adequately address the problems to plaintiffs' satisfaction. (Id. ¶¶ 15-16.)

Consequentially, on January 26, 2007, plaintiffs filed a complaint in with this court alleging three causes of action: negligence, breach of implied warranty, and breach of a third party beneficiary contract. (Compl. ¶ 17-27.) Jurisdiction is based on diversity of citizenship, as plaintiffs are both citizens of California and defendant Victory is a corporation incorporated in the State of Nevada, and the amount in controversy exceeds $75,000. (Id. ¶¶ 3-4, 16.) On May 15, 2007, defendants filed this motion to stay pending arbitration, arguing that the existence of an arbitration provision in the Prime Contract, which is incorporated by reference into the Subcontract, requires that plaintiffs arbitrate their dispute with Victory. (Mot. to Stay 3.)

II. Discussion

The Federal Arbitration Act (FAA) provides that a party may seek an order to compel arbitration from a district court

3

where another party fails, neglects, or refuses to arbitrate. 9 U.S.C. §§ 2, 4.[1] Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985)(emphasis in original). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although the FAA sets forth a policy favoring arbitration, "a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960); <u>see also</u> <u>Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.</u>, 925 F.2d 1136, 1139 (9th Cir. 1991). Thus, whether a party has submitted to arbitration is first and foremost a matter of contractual interpretation that must hinge on the intent of the parties. <u>United Steelworkers</u>, 393 U.S. at 582; <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985).

In this case, defendant argues that the arbitration agreement in the Prime Contract (which requires arbitration of

---

[1] "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . ." 9 U.S.C. § 4.

4

1 disputes between the owners and the Geney) is incorporated into
2 the Subcontract between Geney and Victory, thereby requiring that
3 any disagreement between Victory and the owners to be arbitrated.
4 The basis for Victory's contention that the parties agreed to
5 arbitrate is the language of the two contracts.  (Mot. to Stay
6 6.)  The Prime Contract is clear that the "Contract Documents
7 shall <u>not be construed to create a contractual relationship of
8 any kind</u> . . . <u>between the Owner and a Subcontractor</u> . . ."
9 (Prime Contract § 1.1.2) (emphasis added).  Without any such
10 relationship, there is no basis for any sort of "agreement to
11 arbitrate," the necessary predicate for this court to require the
12 parties to submit to arbitration.  <u>United Steelworkers</u>, 393 U.S.
13 at 582.
14         The Subcontract <u>does</u> incorporate the Primary Contract,
15 including the arbitration provision therein.  (Subcontract § 1.)
16 The effect of that incorporation is made clear, however, by the
17 Primary Contract, which says that "[e]ach subcontract agreement
18 shall . . . allow to the Subcontractor . . . the benefits of all
19 rights, remedies and redress against the <u>Contractor that the
20 Contractor</u> . . . <u>has against the Owner</u>." (Prime Contract § 5.3.1)
21 (emphasis added).  Thus, while there exists an agreement
22 providing for arbitration of disputes between plaintiffs and
23 Geney, and an identical agreement allowing for arbitration of
24 disputes between Geney and Victory, at no point is Victory's
25 right to demand arbitration extended to a dispute with
26 plaintiffs.  Rather, the rights and benefits of the subcontractor
27 are purposefully and expressly limited to the Contractor (i.e.
28 Geney).

5

However, despite the lack of any explicit agreement, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles," such as "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (citing Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185 (9th Cir. 1986)). Under this doctrine, "nonsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" Id. (citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 195 (3d Cir. 2001)). In this case, by asserting rights and benefits under the Subcontract, plaintiffs are estopped from avoiding the arbitration provision. (Reply to Mot. to Stay 5.)

Plaintiffs seek damages directly relating to the work Victory performed under the Subcontract, (Compl. ¶¶ 17-27), and all three of plaintiffs' causes of action rely on duties and promises created explicitly in, and only in, the Subcontract. Specifically, plaintiffs' first cause of action seeks to recover in negligence. (Compl. ¶¶ 17-19.) The fundamental requirement for a claim of negligence is that the defendant owes a legal duty to plaintiff. See, e.g., Baptist v. Robinson, 143 Cal. App. 4th 151, 170 (2006). However, the duty to "perform their work with due care," (Compl. ¶ 17), does not arise out of thin air. The only conceivable source of any such duty on behalf of defendants, and indeed the only source argued by plaintiffs for these duties,

6

is the Subcontract into which they entered.[2]

Moreover, the second (breach of implied warranty) and third (breach of third party contract) causes of action are explicitly grounded in contract law. (Id. ¶¶ 20-27.) When a nonsignatory seeks to enforce provisions of a contract to which it was not a party, equitable estoppel must prevents that entity from avoiding the obligations and burdens that also exist under the contract. Cf. Comer, 436 F.3d at 1102 (finding that the nonsignatory could not be compelled to arbitrate because he "did not seek to enforce the terms of the . . . agreements, nor otherwise to take advantage of them"). Accordingly, this court will give effect to the arbitration provision in the Subcontract.

IT IS THEREFORE ORDERED that defendant's motion to stay be, and the same hereby is, GRANTED.

The Clerk is ordered to administratively close this case, subject to its being reopened upon the noticed motion of either party.

IT IS SO ORDERED.

DATED: June 27, 2007

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2] Moreover, while it need not address the merits of plaintiffs' arguments for the purposes of this motion, the court notes that the economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 988 (2004). In this case, all of plaintiffs' claims sound solely in the expectations created by the Prime Contract.

7